*In re* ESTATE OF DANIEL F. RICE, Deceased.—(RICE FOUNDATION, Plaintiff-Appellant, *v.* DANIEL F. RICE, JR., *et al.*, Defendants-Appellees.— (CHARLES D. DONALDSON *et al.*, Plaintiffs-Appellees).)

Second District   No. 82—194

Opinion filed September 1, 1982.

Don H. Reuben, Thomas F. Ging, Theodore J. Low, and James R. Daly, all of Reuben and Proctor, of Chicago, for appellant Rice Foundation.

Charles J. O'Laughlin and Colleen K. Connell, both of Jenner and Block, of Chicago, for appellants Arthur A. Nolan, Jr., and Continental Illinois National Bank & Trust Co.

Alfred E. Woodward, R. Terence Kalina, John F. Garrow, and S. Louis Rathje, all of Rathje, Woodward, Dyer & Burt, of Wheaton, for appellee Daniel F. Rice, Jr.

Jack Osswald and Robert Howington, both of Howington, Elworth, Osswald & Hough, of Chicago, for appellees Executors of Estate of Daniel F. Rice.

Louis G. Davidson, John B. Davidson, and Ronald A. Drumke, all of Louis G. Davidson and Associates, Ltd., of Chicago, for appellees Daniel F. Rice, Jr., and Mary L. Rice.

Eckhart, McSwain, Hassell & Silliman, of Chicago, for appellees Beatrice Rice Sheridan, Elizabeth Palmer, Shirley Gillick, and Peter Bachrach and family.

Jane Shaw Whitman, William K. Stevens, Wilber H. Boies, and Eileen Bannon Trost, all of McDermott, Will & Emery, of Chicago, for appellees Bachrach family.

Samuel H. Young and Theodore W. Grippo, Jr., both of Skokie, for appellee Patricia Gillick Nolan.

Tyrone C. Fahner, Attorney General, of Springfield, and Richard W. Larkin, of Barasa and Larkin, of Chicago, and Hartman E. Stime, of Peregrine, Stime, Newman and Ritzman, Ltd., of Wheaton, and Marvin A. Marder, of Marder & Baizer, of Highland Park (Robert A. Tingler and Floyd D. Perkins, Assistant Attorneys General, and Matthias Lydon, Special Assistant Attorney General, of counsel), for other appellees.

JUSTICE VAN DEUSEN delivered the opinion of the court:

This is an appeal brought by the Rice Foundation and the co-executors of the Estate of Ada L. Rice, deceased, from the failure of the trial court to vacate a settlement order and companion decree entered on February 5, 1982, *nunc pro tunc*, January 25, 1982, and an amending order entered February 18, 1982.

Historically, this matter commenced with the death of Daniel F. Rice, Sr., on February 5, 1975. Through his will Rice, Sr., provided for the establishment of two trusts, Trusts A and B. The two trusts were to be funded by splitting Rice, Sr.'s, gross residual assets. Trust A was established to provide for the lifetime needs of the testator's wife, Ada L. Rice. Under the will, Mrs. Rice was given the power of appointment over the Trust A principal. Trust B was established for the benefit of named parties. These named individuals were several relatives of Rice, Sr., including his son, Daniel F. Rice, Jr., and the Rice Foundation, a not-for-profit corporation. For a more detailed explantation of the will and trust provisions and other aspects of the litigation, see *In re Estates of Rice* (1979), 77 Ill. App. 3d 641, and *In re Estate of Rice* (1981), 96 Ill. App. 3d 1137.

Because of the language used in the will and the changes in the tax laws, numerous problems arose when trying to fund the trusts. Additionally, a multitude of claims, lawsuits, and counterclaims were filed by the parties named in the will. The most litigious of these was Daniel F. Rice, Jr. These suits, which were filed in Kentucky, in the Federal courts, and in several Illinois circuit courts, delayed the proceedings in this, the probate case.

In April of 1977, while the probate proceedings and the numerous lawsuits were pending, Ada L. Rice died. In her will and an attached

codicil, Ada L. Rice exercised her power of appointment over the Trust A assets. Under the terms of the codicil, $500,000 of the Trust A funds were to be used to establish a trust (the codicil trust) with the Continental Illinois National Bank and Trust Co. as trustee. Rice, Jr., and his wife, Mary Rice, as beneficiaries of the trust, were to receive $25,000 a year for life from the trust income. Upon the death of the beneficiaries, the codicil trust assets were to go to the Rice Foundation. The remainder of the Trust A assets were to go to the Rice Foundation.

Due to the multitude of legal proceedings, the Daniel F. Rice estate has been pending for seven years. The Ada L. Rice estate has been pending for five years. Because there has been protracted litigation concerning the validity and the tax-exempt status of the Rice Foundation, taxing authorities have filed tax-deficiency notices against the Ada L. Rice estate.

In April of 1981, the Illinois Attorney General's Office, in its capacity as supervisor of public charities, initiated negotiations for a settlement of all claims. The negotiations, however, reached an impasse, and by December 2, 1981, the parties were preparing for trial. At that time, the parties learned of the possibility of further tax liability if they did not settle the case quickly.

On January 5, 1982, the parties met in the chambers of the trial judge, Judge Teschner, in order to negotiate a settlement. No record was made of these negotiations. On January 14, 1982, Mr. Jack Osswald, one of the attorneys for the Daniel F. Rice estate, reported to the court that an agreement in principal had been reached. He then requested that the other pending proceedings, including an appeal before the Illinois Supreme Court, be stayed. The court then requested that the co-executors of the Daniel F. Rice estate draft and circulate a renewed proposal for a settlement agreement. The court requested the executors to give a more specific indication of how the estate assets were to be distributed.

On January 18, 1982, Mr. Osswald circulated a renewed motion which contained more specific terms for a settlement agreement. This detailed proposal called for a distribution of the assets of the Daniel F. Rice estate. Trust B was to be funded in specific amounts and distributed through a series of reformed trusts. Trust A was to be funded and distributed by establishing the $500,000 codicil trust and transferring the remainder to the Rice Foundation. The proposal also required the estate to distribute specific sums of estate assets to named parties in exchange for the dismissal of pending lawsuits and the withdrawal of answers in the will construction suit. The proposal further required

the parties to consent to the reformation of the Rice, Sr., will and to exchange mutual and general releases.

On January 25, 1982, counsel for all of the parties, including the Rice Foundation and the Ada L. Rice estate, met in the chambers of Judge Teschner in order to negotiate a settlement. All parties had requested that Judge Teschner be present during the negotiations. While there is no transcript of these proceedings before Judge Teschner, all of the parties seem to agree that the following events occurred. During the negotiations, the attorneys made references to the Osswald proposal. When negotiating dollar amounts, the Rice Foundation insisted that the amount to be distributed to Rice, Jr., be reduced by $200,000. Eventually, Rice, Jr., agreed to a $150,000 reduction, and the other Trust B beneficiaries agreed to a $50,000 reduction. At the end of the negotiations, Judge Teschner polled the attorneys to determine if an agreement had in fact been reached. The attorneys all responded in the affirmative. With the consent of all the attorneys, Judge Teschner then called Justice Moran of the Illinois Supreme Court, informed him that the case had been settled, and requested a continuance. Finally, the judge entered an order allowing the payment of $450,000 in attorney fees to the attorneys of the Trust B beneficiaries. The executors of each estate were directed to draw up the necessary settlement documents.

On February 1, 1982, the attorneys for the Daniel F. Rice estate filed their settlement documents and distributed copies of the documents to all the parties. Generally, these settlement documents were a more detailed and formalized embodiment of the Osswald proposal. Some changes were made, however, in the amounts to be distributed by the estate to the relatives of Rice, Sr. In the February 1, 1982, documents the principal of a trust fund to be distributed to named beneficiaries had been reduced by $50,000. Similarly, $150,000 had been subtracted from a specific sum that was to be awarded to Daniel F. Rice, Jr., and Mary Rice. Both the Osswald proposal and the settlement documents called for the exchange of mutual, general releases among the parties and their attorneys. Neither the Osswald proposal nor the settlement documents mentioned a requirement that the trial court enter findings of fact concerning the validity of the Rice Foundation.

On February 3, 1982, a hearing was held to confirm the settlement documents. At the beginning of the hearing, Judge Teschner spread of record some of the events which occurred on January 25, 1982. The court stated that since June the court had spent a considerable amount of time attempting to settle the case. He related that on

January 25, 1982, the parties met in his chambers to discuss a settlement. The court stated that after five hours of conferences, the attorneys for the parties reached a settlement agreement concerning all matters in controversy. He stated that he then polled the attorneys and all the attorneys indicated that their clients agreed to and accepted the settlement agreement.

After the trial judge made these statements, the Attorney General's office indicated that there were a few "tag-end" matters that needed to be discussed off the record. Apparently, the matters in controversy involved specific numbers in the agreement. Attorneys for the Trust B beneficiaries asserted that there was no controversy and that it was too late for the parties to rescind.

Counsel for Rice, Jr., and the various Trust B beneficiaries argued that everyone had worked from the earlier Osswald proposal and that all had agreed to the specific sums in the proposal as they were modified in the settlement documents distributed by the executors on February 1, 1982. Counsel for the Rice Foundation moved to go off the record.

An attorney for the Ada Rice estate stated that, subject to the approval of the Foundation as principal legatee under the will, they saw no "stumbling block" to the documents. The attorney noted that additional documents may be necessary to obtain a dismissal of the cases pending against the Ada Rice estate. Rice, Jr.'s attorney responded that the general releases to be signed were sufficient, but he was certain that Rice, Jr., would sign stipulations for dismissal of those cases.

During the rather heated discussions of February 3, 1982, Mr. Ging, attorney for the Rice Foundation, suggested that maybe there was no settlement and that a hearing should be held to determine if there had in fact been a settlement. Mr. Ging argued that the total of the specific sums to be distributed to the relatives exceeded the amount upon which the parties had agreed. Mr. Ging then stated that the Foundation would not agree to the entry of the decree. The case was continued.

Two days later, on February 5, 1982, additional provisions to the documents were discussed. Several technical and language problems were also noted. At that time, the Ada Rice estate filed its settlement documents. Attorneys for Rice, Jr., objected to the documents arguing that the document contained items not agreed upon by the parties, *i.e.*, findings of fact concerning the directors of the Rice Foundation and various inventories.

At this hearing, Mr. Lydon of the Attorney General's Office stated that his office had no objection to the settlement documents

filed by the executors of the Daniel F. Rice estate. Prior to signing the decree tendered by the executors, the trial judge assured the parties that he was aware of the terms of the settlement and he would enter all necessary orders to effectuate that settlement. The trial court then signed the order and the decree and entered the documents *nunc pro tunc* as of January 25, 1982. At that specific time, no objection was made to the entry of the settlement order or the decree.

At the next hearing held on February 10, 1982, the Rice Foundation informed the court that it was preparing a motion to vacate the settlement order. On February 18, 1982, the parties met to enter an order conforming the settlement decree. An order was entered which made certain language changes to the original decree order. At this hearing, counsel for the Rice Foundation once again objected to the settlement decree. The Foundation argued that there had been no meeting of the minds; therefore, no settlement had been reached. At the same hearing, the attorney for the Ada L. Rice estate again urged that its documents be entered by the trial court. Once again objections were made to these documents. The objectors argued that the documents did not reflect the agreement made on January 25, 1982.

On February 23, 1982, the Rice Foundation filed a motion to vacate. This motion raised three specific objections to the settlement documents and the decree entered by the court. First, they objected to the specific dollar amounts set out in the settlement documents. It was alleged that the Foundation agreed to a gross settlement award of $5.7 million, and that the total value of the awards contained in the documents accepted by the court exceeded $6.1 million. The Foundation further alleged that the decree is insufficient in that there are no findings concerning the validity of the Foundation. Finally, the Foundation alleged that it did not agree to the giving of a general release to the attorneys for the executors, specifically Mr. Osswald. The Foundation filed four affidavits in support of the motion. After lengthy arguments, the court denied the motion to vacate, and simultaneously denied a motion to stay filed by the Foundation. On March 2, 1982, the Rice Foundation filed a notice of appeal. A separate notice of appeal was filed by the Ada L. Rice estate on March 12, 1982. Both notices requested this court to reverse and vacate the settlement order and the decree entered as of January 25, 1982, and the amending order of February 18, 1982.

On appeal, the principal contentions of the Rice Foundation are (1) that the summary procedure employed by the trial court when entering the settlement order was manifestly contrary to established

law and (2) that the record does not support the ruling that the Rice Foundation agreed to the settlement as set forth in the order and the decree of the trial court. While co-executors of the Ada Rice estate purportedly contend that no agreement was reached which extended to the Ada Rice estate, the reply briefs of both the Rice Foundation and the Ada Rice estate make clear that a settlement in fact had been reached on January 25, 1982, and that the crucial issue on appeal is not whether a settlement agreement was reached among the parties on that date, but whether the specific orders entered by the court on February 5, 1982, *nunc pro tunc*, as of January 25, 1982, and the amending order of February 18, 1982, reflect the agreement which the parties had reached on January 25.

Initially, we note that settlement agreements among the parties to settle disputed claims are to be encouraged and should be given full force and effect. (*Sheffield Poly-Glaz, Inc. v. Humboldt Glass Co.* (1976), 42 Ill. App. 3d 865, 868; *Knoll v. Swanson* (1968), 92 Ill. App. 2d 398, 402.) Moreover, oral settlement agreements may be enforced and will not be set aside unless there is a showing of fraud or mistake. *Sheffield Poly-Glaz, Inc. v. Humboldt Glass Co.* (1976), 42 Ill. App. 3d 865, 868; *Zamouski v. Gerrard* (1971), 1 Ill. App. 3d 890, 895.

All parties agree to the foregoing principles, and also agree that the litigation in this matter was ripe for settlement. As was aptly stated by the Rice Foundation in its brief:

"The Estate and Foundation have been in litigation for many years. The Rice litigation, *** adds luster to no one and tends to provoke adverse comment by the public against the bar and the bench generally. Ultimately, one consequence of this litigation is that less dollars are available to the unfortunate and the needy that would be recipients of the fund disbursed by the Rice Foundation. In the meantime, the lawyers appear to be venal and the courts ineffective. We believe that the best interest of justice will be served if this litigation can be fairly ended as expeditiously as possible."

Nevertheless, the Rice Foundation filed a motion to vacate the decree, the settlement order and amending order entered in this case and appeals the trial court's denial of that motion. In a somewhat novel manner, the Foundation requests that in lieu of reversing the trial court, this court should enter as a remittitur a settlement decree in which the Foundation would agree to and accept the specific dollar distribution set forth in the trial court's decree but would additionally provide for findings concerning the validity of the Foundation and the

authority of its board of directors, and would also provide that the Foundation need not give general releases to the attorney for the executors of the estate of Daniel F. Rice.

On appeal, the Rice Foundation first contends that the summary procedure employed by the trial court in entertaining and refusing to vacate the disputed orders was manifestly improper. In support of their contention, the Foundation relies on the case of *Janssen Brothers v. Northbrook Trust & Savings Bank* (1973), 12 Ill. App. 3d 840.

In *Janssen*, a comprehensive settlement agreement was reached with the court's assistance. Judgment on that agreement was summarily entered. The parties did not question the validity of the settlement decree. Later, however, the plaintiff appeared before the trial court and requested instructions and rulings concerning performance of the settlement agreement. When requesting these rulings the plaintiff asserted facts and events which occurred outside of the presence of the trial judge. Without taking any evidence, the trial court made several rulings concerning the performance of the settlement. The defendants objected to the informal, summary procedure used by the trial court to determine whether the plaintiff had acted in compliance with the settlement. The appellate court noted that evidence and testimony concerning events which occurred outside of the judge's presence were necessary to satisfactorily resolve the post-settlement issues. Under those circumstances, a summary procedure is improper.

■ In the present case, we are dealing with the court's entry of a settlement order and decree based on a court-supervised settlement agreement. Here, the trial judge stated for the record that the order and decree conformed to the parties' oral agreement which was reached in his presence. Unlike the plaintiff in *Janssen*, the Foundation did not assert that any relevant matters concerning the negotiations and terms of the agreement occurred outside of the presence of the trial court. Furthermore, in *Janssen*, the court recognized that under certain circumstances, a motion for entry of judgment in accordance with a settlement agreement may properly be granted in summary proceedings. *Janssen Brothers v. Northbrook Trust & Savings Bank* (1973), 12 Ill. App. 3d 840, 843; see also *Kwak v. St. Anthony De Padua Hospital* (1977), 54 Ill. App. 3d 719, 725; *Sheffield Poly-Glaz, Inc. v. Humboldt Glass Co.* (1976), 42 Ill. App. 3d 865, 868.

■ Moreover, we note that the Rice Foundation never objected to the summary proceedings and, despite their contentions to the contrary, the Foundation never requested an evidentiary hearing. At best, on February 3, 1982, Attorney Ging, counsel for the Foundation, suggested that the attorneys be placed under oath and testimony be

taken to determine what occurred in the presence of the trial judge at the conference held on January 25, 1982. This suggestion was made after most of the attorneys had already related to the court their versions of what occurred on the 25th, and after the trial court had stated that a settlement had indeed been reached. There is no indication in the record that the Foundation ever specifically requested or formally moved for a hearing, nor did the Foundation secure a ruling granting or denying a request for a hearing at which the participants in the January 25 settlement conference could give sworn statements. Because the Foundation never objected to the summary proceedings and never formally requested an evidentiary hearing in the trial court, they cannot raise for the first time in the appellate court the issue of whether the trial court erred in not conducting a hearing. *Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141; *In re Marriage of Brophy* (1981), 96 Ill. App. 3d 1108, 1116.

The Foundation next contends that the order of the trial court is not supported by the evidence. The Foundation contends that their affidavits, which were attached to the motion to vacate, are the only evidence in the record of what occurred at the January 25, 1982, settlement conference. The Foundation concludes that these uncontradicted affidavits demonstrate that the trial court's order was against the manifest weight of the evidence; therefore, the trial court's orders must be set aside.

■ In support of this contention, the Foundation cites *Haycraft v. Davis* (1869), 49 Ill. 455, and *Eilers v. Chicago Transit Authority* (1954), 2 Ill. App. 2d 233. Their reliance upon both cases is misplaced. In those cases, all of the events in question occurred outside the presence of the trial court. Neither case involved the use of affidavit to establish what occurred in the presence of the trial judge. Affidavits of what occurred in the presence of the trial judge do not necessarily have to be accepted by the trial judge because it can be presumed that the trial judge knew the averments contained in the affidavit to be untrue or knew that their effect was obviated by other things which occurred in the presence of the trial judge. See *Peyton v. Village of Morgan Park* (1898), 172 Ill. 102, 107; *Tindall v. Chicago & Northwestern Ry. Co.* (1916), 200 Ill. App. 556, 562.

In *Kwak v. St. Anthony De Padua Hospital* (1977), 54 Ill. App. 3d 719, the plaintiff attempted to use an affidavit to establish events which occurred in the presence of the trial judge. In *Kwak* the plaintiff had petitioned the court for an order dismissing the case as having been settled. Attached to plaintiff's petition was an affidavit of her attorney stating that at a pretrial conference the defendant's at-

torney made a settlement offer which was communicated to the trial judge and accepted by the plaintiff. In a summary proceeding, the trial court denied the motion to dismiss. In affirming the trial court, the appellate court noted that the trial judge had been present at the pretrial conference and concluded that under these circumstances the reviewing court must assume that matters not included in the record, yet known to the pretrial judge, were the basis of his conclusion that an agreement had not been reached. *Kwak v. St. Anthony De Padua Hospital* (1977), 54 Ill. App. 3d 719, 726.

■■ Here, because the trial judge had personally heard the discussion and observed the events related in the affidavits, he could reject them as untrue or as incomplete statements of the actual events. Relying on his own recollection, he could have determined that the executors' documents correctly reflected the settlement agreement and that any discrepancy noted by the Foundation was due to a unilateral misunderstanding. Such a unilateral misunderstanding would not allow a rescission of the agreement. *Kalman v. Bertacchi* (1978), 57 Ill. App. 3d 542, 548; *Sheffield Poly-Glaz, Inc. v. Humboldt Glass Co.* (1976), 42 Ill. App. 3d 865, 868.

The Rice Foundation correctly notes that the record contains very little evidence of what occurred before the trial court on January 25, 1982. The background information that we have set forth in this opinion was garnered from the undisputed statements contained in the briefs of all parties and from the statements of the attorneys made on the record at proceedings held subsequent to the January 25, 1982, negotiations. The Foundation attempts to use the affidavits to establish for the record the events that occurred in a proceeding before the trial judge. Generally, the events which occur before the trial court are preserved by filing a verbatim report of the proceedings. 73 Ill. 2d R. 323(a).

We are unable to discern from the record in this case whether a court reporter was requested for the January 25, 1982, negotiations. It is evident from the other proceedings that the attorneys for the Foundation generally insisted that the court reporter not be present. Even if a verbatim transcript was not available, the Foundation could have compiled a bystander's report of the negotiations proceedings. (73 Ill. 2d R. 323(c).) Such a report would have preserved the evidence for review. The Foundation argues, however, that these off-the-record negotiations held in the presence of the trial judge were not a court proceeding; therefore, a report of proceedings or a bystander's report would have been inappropriate. We disagree.

■■ The purpose of a report of proceedings or a bystander's re-

port is to afford a means for putting before the reviewing court matters not included in the formal common-law record. (*Tansor v. Checker Taxi Co.* (1963), 27 Ill. 2d 250, 253.) It should consist of testimony, rulings of the trial court, all matters upon which rulings were made, and any other proceedings which the appellant desires to incorporate in the record on appeal. (73 Ill. 2d R. 323(a); *Husted v. Thompson-Hayward Chemical Co.* (1965), 62 Ill. App. 2d 287, 292.) We see no reason why it would be inappropriate to file a report of proceedings or a bystander's report of the settlement conference held before the trial judge on January 25, 1982.

If the Foundation and the Ada L. Rice estate intend to rely on events that occurred during that conference, it is their duty as appellants to correctly preserve that matter for review. (*Stony Island Church of Christ v. Stephens* (1977), 54 Ill. App. 3d 662, 668.) The Foundation's suggestion that because the trial court failed to hold an evidentiary hearing, the absence of a record concerning the events of January 25 is the trial judge's fault is totally without merit.

Absent an adequate record on appeal, we are unable to discern from our examination of the orders of the trial court whether the orders correctly reflected the oral settlement agreement reached on January 25, 1982. For example, the Foundation contends that the total value of the award contained in the decretal order was in excess of $5.7 million, the amount upon which the parties had orally agreed. Because some of the awards are in the form of a life income and some of the interests are subject to divestment, and because there is no indication in the record as to what valuation methods or actuarial tables were used to value the total award, we cannot say that the total value of the award is in excess of $5.7 million.

Other than the affidavits, which the trial judge did not need to accept as true, there is absolutely no support in the record for the Foundation's contention that the parties agreed to the trial court's entry of finding concerning the validity of the Foundation and to limit the releases to be granted to the attorneys for the estate.

▬ Because neither the Foundation nor the Ada L. Rice estate has presented a complete or adequate record on appeal, we must indulge every presumption favorable to the judgment. (*Kwak v. St. Anthony De Padua Hospital* (1977), 54 Ill. App. 3d 719, 725.) Where the record does not disclose to the reviewing court all of the facts upon which the trial court's actions were based, we are required to assume that the facts known to the trial court were sufficient to support the judgment. (See *Belcher v. Spillman* (1975), 28 Ill. App. 3d 973, 975.) Under these circumstances, we can only assume that matters not in-

cluded in the record, yet known to the trial judge, were the basis for his conclusion that an agreement had been reached and that the order and decree entered as of January 25, 1982, and as amended by the order of February 18, 1982, correctly reflected that oral agreement. We cannot say that the trial court erred in entering the settlement orders.

Affirmed.

REINHARD and NASH, JJ., concur.